IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **THOMAS STELZER,** : | |
| Plaintiff : | No. 1:21-cv-02097 |
| : | |
| v. : | (Judge Kane) |
| : | |
| **STEWART LOGISTICS, INC., et al.,** : | |
| **Defendants** : | |

## MEMORANDUM

Before the Court is Plaintiff Thomas Stelzer ("Plaintiff")'s motion for leave to amend his complaint (Doc. No. 28) to assert allegations of recklessness against and seek punitive damages from Defendants Stewart Logistics, Inc. (Defendant Stewart Logistics) and William D. Richardson (Defendant Richardson) (collectively, "Defendants"). For the reasons stated below, the Court will grant Plaintiff's motion.

**I.  BACKGROUND**[1]

On February 3, 2021, Defendant Richardson and Plaintiff were involved in a highway accident in Dauphin County, Pennsylvania. (Doc. No. 1 ¶¶ 5, 10.) Plaintiff claims that the accident occurred after Defendant Richardson "caused [a] tractor/trailer to leave the right southbound lane of Interstate 83, enter the left southbound lane, [and] violently crash into Plaintiff's automobile and pin [his] automobile against a concrete wall" divider. (Id. ¶ 10.) Plaintiff suffered injuries because of the accident, and on December 14, 2021, initiated the above-captioned action against Defendants. (Id. at 1.) Plaintiff's complaint asserts two counts: Defendants are liable for his injuries because Defendant Richardson negligently caused the accident during the course of his employment for Defendant Stewart Logistics (Count I) and

---

[1] The following factual background is taken from the allegations of Plaintiff's complaint. (Doc. No. 1.)

Defendant Stewart Logistics is liable for his injuries because it negligently "entrust[ed] its tractor/trailer to Defendant Richardson" (Count II).  (Id. ¶¶ 6, 9, 10-14, 21-22.)  Defendants filed an answer with affirmative defenses on January 24, 2022.  (Doc. No. 8.)

This Court held a case management conference with the parties on March 8, 2022, during which an August 31, 2022 close of fact discovery date was set.  Following a post-discovery status conference on October 6, 2022 (Doc. No. 19), the Court set the following expert deadlines for the parties: December 15, 2022, for Plaintiff, and January 31, 2022, for Defendants[2] (Doc. No. 20).  The Court also referred the parties to mediation (Doc. No. 22), although the case did not settle (Doc. No. 35).

On December 7, 2022, "Plaintiff's counsel produced an expert liability report . . . from Walter A. Guntharp, Jr., an expert in trucking industry safety."  (Doc. No. 29 at 3.)  Mr. Guntharp's report concluded that Defendants violated various aspects of the Federal Motor Carrier Safety Act and that "the actions of both Mr. Richardson and Stewart were outrageous" and reckless, "represent[ing] a shocking deviation from conduct reasonably expected from a transportation company and its driver."  (Doc. No. 29-2 at 18.)  Plaintiff filed the instant motion to amend his complaint on January 31, 2023 (Doc. No. 28), with a brief in support (Doc. No. 29) and a certificate indicating Defendants' non-concurrence to it (Doc. No. 28-2).  On February 10, 2023, Defendants filed a brief in opposition to Plaintiff's motion,[3] and on February 21, 2022, Plaintiff filed a reply brief.  Having been fully briefed, Plaintiff's motion is ripe for disposition.

---

[2]  On January 3, 2023, the Court extended Defendant's expert deadline until February 17, 2023. (Doc. No. 26.)

[3]  On February 21, 2023, eleven days later, Defendants filed exhibits to supplement their brief in opposition.  (Doc. No. 32.)

## II. LEGAL STANDARD

Rule 15(a) of the Federal Rules of Civil Procedure authorizes a party to amend his pleading once as a matter of course within 21 days after serving it, or if the pleading is one to which a responsive pleading is required, 21 days after service of the responsive pleading, or 21 days after service of a dispositive motion under Rule 12, whichever is earlier.  See Fed. R. Civ. P. 15(a)(1)(A) and (B).  "In all other cases, a party may amend its pleading only with the opposing party's written consent, or the court's leave," which courts are to freely give "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Consistent with this policy, leave to amend rests in the discretion of the court and may be denied if the court finds "undue delay, bad faith or dilatory motive on the part of the movant, failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc."  See Foman v. Davis, 371 U.S. 178, 182 (1962); see also Oran v. Stafford, 226 F.3d 275, 291 (3d Cir. 2000); In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997).

With regard to "undue delay," the Third Circuit has held that the mere passage of time does not require that a motion to amend a pleading be denied; "however, at some point, the [movant's] delay will become 'undue,' placing an unwarranted burden on the court, or will become 'prejudicial,' placing an unfair burden on the opposing party."  See Adams v. Gould, Inc., 739 F.2d 858, 868 (3d Cir. 1984).  In assessing the issue of "undue" delay, the Court's focus is on the movant's motives for not amending sooner.  See id.

The issue of prejudice focuses on hardship to the defendant if the amendment were permitted; specifically, whether amendment would result in additional discovery, cost, or preparation to defend against new facts or new theories.  See Cureton v. Nat'l Collegiate Athletic

Ass'n, 252 F.3d 267, 273 (3d Cir. 2001).  "[T]o establish prejudice, the non-moving party must make a showing that allowing the amended pleading would (1) require the non-moving party to expend significant additional resources to conduct discovery and prepare for trial, (2) significantly delay the resolution of the dispute, or (3) prevent a party from bringing a timely action in another jurisdiction."  Hall v. Borough of Seaside Heights, No. 07-cv-03969, 2008 WL 11510571, at *1 (D.N.J. July 25, 2008).

Futility means that the complaint, as amended, would fail to state a claim upon which relief could be granted.  See In re NAHC, Inc. Sec. Litig., 306 F.3d 1314, 1332 (3d Cir. 2002); In re Burlington, 114 F.3d at 1434.  In assessing futility, a district court applies the same standard of legal sufficiency as applies under Federal Rule of Civil Procedure 12(b)(6).  See In re Burlington, 114 F.3d at 1434.  Accordingly, in assessing the potential futility of a proposed amended complaint, the Court must accept as true the allegations in the proposed amended complaint and construe those allegations in the light most favorable to the party seeking leave to amend.  See In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010).  "Given the liberal standard for the amendment of pleadings, . . . 'courts place a heavy burden on opponents who wish to declare a proposed amendment futile.'"  Synthes, Inc. v. Marotta, 281 F.R.D. 217, 229 (E.D. Pa. 2012) (quoting Aruanno v. New Jersey, No. 06-cv-00296, 2009 WL 114556, at *2 (D.N.J. Jan. 15, 2009)).  "If a proposed amendment is not clearly futile, then denial of leave to amend is improper."  Id. (quoting 6 Charles Allen Wright & Arthur R. Miller, Federal Practice & Procedure § 1487 (2d ed. 1990)).

### III. DISCUSSION

Plaintiff's motion for leave to amend his complaint seeks to add allegations of recklessness against Defendants and claims for punitive damages under Counts I and II. (Doc No. 29-1 at 5, 7-8.) At the outset, Defendants neither argue, nor does the Court conclude, that Plaintiff has acted with undue delay, bad faith, or a dilatory motive. Indeed, the grounds for Plaintiff's motion appear to have been uncovered during discovery and following Mr. Guntharp's expert report in December—making this Plaintiff's first opportunity to amend his complaint. Accordingly, the Court turns to whether granting Plaintiff's motion would be unduly prejudicial to Defendants and whether allowing him to bring claims of punitive damages would be futile.

### A. Whether Granting Plaintiff's Motion Would Cause Undue Prejudice to Defendants

Defendants assert two arguments as to why granting Plaintiff's motion would cause undue prejudice: (1) "[a]llowing the amendment will force Stewart Logistics and Richardson to defend an unwarranted punitive damage claim" and (2) "possibly expose them to damages not covered by insurance which are obviously unduly prejudicial." (Doc. No. 30 at 5-6.) The Court rejects Defendants' first argument because, for the reasons discussed, infra, Plaintiff's proposed claims for punitive damages are plausible. Similarly, the Court rejects Defendants' second contention that granting Plaintiff's motion would expose them to liability for which they have no insurance coverage. Indeed, "Pennsylvania[] [has a] longstanding rule" that "a tortfeasor who is personally guilty of outrageous and wanton misconduct is excluded from insurance coverage as a matter of law." See Wolfe v. Allstate Prop. & Cas. Ins. Co., 790 F.3d 487, 493 (3d Cir. 2015). Possibly being subject to the general burden imposed in Pennsylvania on tortfeasors who knowingly commit reckless misconduct does not impose an undue prejudice upon Defendants.

5

For these reasons, the Court concludes that Defendants have failed to meet their burden of showing any undue prejudice that would result from granting Plaintiff's motion. With this in mind, the Court turns to whether Plaintiff's proposed amendments are futile.

### B.   Whether Plaintiff's Proposed Amendments Are Futile

As discussed above, the touchstone for futility is whether the complaint, as amended, would fail to state a claim upon which relief can be granted. See In re Burlington, 114 F.3d at 1434. Here, Plaintiff's proposed amended complaint asserts allegations of recklessness against Defendants and seeks punitive damages under Counts I and II.

#### 1.   Applicable Legal Standard for Punitive Damages

Punitive damages under Pennsylvania law[4] "are proper only in cases where the defendant's conduct is so outrageous as to demonstrate willful, wanton or reckless conduct." See Hutchison v. Luddy, 870 A.2d 766, 770 (Pa. 2005). To this end, "[t]he state of mind of the actor is vital. The act, or the failure to act, must be intentional, reckless or malicious." See Feld v. Merriam, 485 A.2d 742, 748 (Pa. 1984). Accordingly, a punitive damages claim "must establish that (1) a defendant had a subjective appreciation of the risk of harm to which the plaintiff was exposed and that (2) he acted, or failed to act . . . in conscious disregard of that risk." See Hutchison, 870 A.2d at 772 (citing Martin v. Johns-Manville Corp., 494 A.2d 1088, 1097-98 (Pa. 1985)). In making this determination, "[t]he defendant's subjective appreciation and conscious disregard of the risk of harm can be proved by circumstantial evidence." See Livingston v. Greyhound Lines Inc., 208 A.3d 1122, 1130 (Pa. Super. 2019).

---

[4] The parties do not dispute that the substantive state law of Pennsylvania applies to the case at bar.

"[B]ecause the question of whether punitive damages are proper often turns on the defendants' state of mind, [it] frequently cannot be resolved on the pleadings alone but must await the development of a full factual record at trial." Harvell v. Brumberger, No. 3:19-cv-02124, 2020 WL 6947693, at *8 (M.D. Pa. Nov. 4, 2020). Accordingly, district courts in the Third Circuit generally find allegations of reckless conduct sufficient to state a plausible claim for punitive damages. See Tjokrowidjojo v. San Lucas, No. 20-cv-06564, 2021 WL 1561956, at *2 (E.D. Pa. Apr. 21, 2021) (quoting Harvell, 2020 WL 6947693, at *8) (collecting cases for the proposition that, "[a]s a general rule, the courts have deemed . . . motions to dismiss punitive damages claims to be . . . inappropriate where . . . the complaint alleges reckless conduct").

    2.    **Analysis**

The Court concludes that allowing Plaintiff to amend his complaint to seek an award of punitive damages would not be futile because his proposed amended complaint makes several allegations of reckless conduct in support of his Counts I and II claims. As to Count I—which is asserted against both Defendants—Plaintiff's proposed amended complaint provides the following allegations of reckless conduct "demonstrating conscious disregard for the safety of the motoring public":

- "After Defendant Richardson's physicians determined that he was totally and permanently physically disabled from performing any employment due to" various medical conditions, he "decided to return to work as an interstate truck driver and obtained a Medical Examiner's Certificate, as required by the Federal Motor Carrier Safety Regulations," while knowingly withholding "his disability determination and/or his medical conditions";

- Defendant Richardson "failed to complete any daily truck inspection reports [as] required by the Federal motor Carrier Safety Regulations and knowingly entered false information on his daily time logs so that his employer could not monitor his driving activities";

- Defendant Richardson "drove his tractor/trailer three (3) to four (4) car lengths behind the vehicle ahead of him" when "he knew that this was an unsafe following distance, and he failed to check his side mirrors to determine the position of

- vehicles around his tractor/trailer when he knew that this was an unsafe driving practice"; and
- Defendant Richardson "caused his tractor/trailer to cross over a solid white line painted on the highway surface so that he could make a lane change when he knew that crossing over a solid white line is prohibited by Pennsylvania law."

(Doc. No. 29-1 ¶ 14A.) Plaintiff's allegations of reckless conduct, taken as true, provide sufficient circumstantial evidence to support a plausible inference that Defendant Richardson subjectively appreciated the risk of harm that could result under the circumstances and consciously disregarded that risk when he caused the accident on February 3, 2021. See, e.g., Mastri v. Wilson, No. 08-cv-01762, 2009 WL 10718116, at *5 (M.D. Pa. Mar. 17, 2009) (concluding it was plausible that a defendant, who was a professional driver, subjectively appreciated and consciously disregarded the risk of harm under the alleged circumstances where the plaintiff "allege[d] Defendant [Driver] falsified his logs, violated the [Federal Motor Carrier Safety Regulations], knowingly drove the bus at a dangerous rate of speed while following behind Plaintiff too closely, and knowingly violated Defendant [Employer's] internal policies"). Moreover, because Plaintiff alleges that Defendant Richardson was acting within the scope of his employment during the accident, it is plausible that Defendant Stewart Logistics is vicariously liable for any award of punitive damages. See Livingston, 208 A.3d at 1132 (explaining that "[u]nder Pennsylvania law, an employer is vicariously liable for the reckless conduct of an employee without proof that the employer's conduct satisfies the standard for punitive damages"). Accordingly, granting Plaintiff's motion to amend his complaint to assert a claim for punitive damages would not be futile as to Count I.

As to Count II—which is asserted against Defendant Stewart Logistics alone—Plaintiff's proposed amended complaint alleges that Defendant Stewart Logistics, "by and through its corporate officers, . . . understood that as a trucking company engaged in interstate commerce," it

8

"was required to know and comply with the Federal Motor Carrier Safety Regulations and trucking industry safety standards that are intended to promote and protect the safety of the motoring public." (Doc. No. 29-1 ¶ 22A.) Despite this knowledge, Plaintiff asserts that Defendant Stewart Logistics demonstrated a "conscious disregard for the safety of the motoring public, and violat[ed] the Regulations and [trucking industry safety] standards" by:

- Hiring "seventy (70)-year-old William D. Richardson as an interstate truck driver with the knowledge [as admitted in deposition testimony] . . . that he was recently unemployed for five (5) years due to underlying medical conditions, including diabetes and chronic obstructive pulmonary disease, without making any further inquiry or investigation into his health history or status or how he obtained a Medical Examiner's Certificate under these circumstances";

- Never contacting or inquiring about "Defendant Richardson's prior employers";

- Never "requir[ing] Defendant Richardson to demonstrate his truck driving ability before hire and plac[ing] into his personnel/driver qualification file a 'test drive' form documenting a road test that never happened";

- Allowing "Defendant Richardson to ignore the requirements of the Federal Motor Carrier Safety Regulations to make and submit daily truck inspection reports and accurate daily time logs, and . . . fail[ing] to monitor the driving activities of Defendant Richardson in any meaningful way";

- Demonstrating a "shocking lack of knowledge of the specific requirements of those regulations as well as trucking industry safety standards, including safe following distances and appropriate practices for checking side mirrors"— "[d]espite its awareness that as a trucking company engaged in interstate commerce, it was required to know and comply with the mandates of the Federal Motor Carrier Safety Regulations"; and

- "[F]oster[ing] a corporate culture that encouraged its truck drivers . . . to ignore and exhibit indifference to the Federal Motor Carrier Safety Regulations and trucking industry standards, including safe following distances and appropriate practices for checking side mirrors."

(Id.) Plaintiff's proposed allegations of reckless conduct, taken as true, provide sufficient circumstantial evidence to support a plausible inference that Defendant Stewart Logistics subjectively appreciated the risk of harm that could result under the circumstances and consciously disregarded that risk when entrusting Defendant Richardson with the operation of a

9

tractor/trailer.  See, e.g., Gonzalez v. Seashore Fruit & Produce, No. 19-cv-01422, 2020 WL 2571101, at *3 (E.D. Pa. May 21, 2020) (granting the plaintiff's motion for leave to amend his complaint to add claims of punitive damages where his proposed amended complaint was premised on allegations of a "'willful and wanton pattern of disregard' for the Federal Motor Carrier Safety Regulations").  Accordingly, granting Plaintiff leave to amend his complaint to assert a claim for punitive damages would not be futile as to Count II.

Defendants' counterarguments fail to meet the "heavy burden [imposed] on opponents who wish to declare a proposed amendment futile."  See Synthes, Inc., 281 F.R.D. at 229.  Essentially, Defendants challenge Mr. Guntharp's expert report—contending that its conclusions are unfounded and that it "merely 'parrots'" legal standards—and argue that Plaintiff's motion attempts to "transform" a "garden variety" negligence case into something more.  (Doc. No. 30 at 2, 5.)  Defendants' first argument is misplaced.  As discussed, supra, the touchstone for whether granting leave to amend would be futile is whether the allegations in the amended complaint, taken as true, plausibly state a claim for which relief can be granted.  The proper focus of the Court's analysis, therefore, is on Plaintiff's allegations—not what its expert concluded in a report.  See, e.g., Gonzalez, 2020 WL 2571101, at *4 (explaining that the defendants' challenge to a plaintiff's motion for leave to amend "misapplie[d] the standard for a denial of leave to amend based on an allegation of futility" because it focused on "deposition testimony adduced during discovery," and not the "legal viability of a punitive damages award in an automobile negligence action").  Next, the Court rejects as premature Defendants' argument that Plaintiff is attempting to transform an ordinary negligence case into something greater.  Indeed, "the motion to dismiss stage is not the appropriate time to differentiate between negligent and reckless conduct," see Ortiz v. Porte Reve Transp., Inc., No. 1:15-cv-00958, 2015

10

WL 4078873, at *4 (M.D. Pa. July 6, 2015), and Defendants have offered no grounds from which to conclude that Plaintiff's proposed claims are legally implausible. Accordingly, based on the "liberal standard for the amendment of pleadings," the Court concludes that Defendants have failed to demonstrate that Plaintiff's proposed amendments are "clearly futile." See Synthes, Inc., 281 F.R.D. at 229.

## IV.   CONCLUSION

For the foregoing reasons, the Court will grant Plaintiff's motion for leave to amend his complaint (Doc. No. 28).[5] An appropriate Order follows.

---

[5] The Court notes that Plaintiff's motion does not fully comply with Local Rule 15.1. Under Local Rule 15.1(a), "[w]hen a party files a motion requesting leave to file an amended pleading, the proposed amended pleading must be retyped or reprinted so that it will be complete in itself including exhibits and shall be filed on paper as a separate document or, in the Electronic Filing System, as an attachment to the motion." Under Local Rule 15.1(b), "[t]he party filing the motion requesting leave to file an amended pleading shall provide (1) the proposed amended pleading as set forth in subsection (a) of this rule, and (2) a copy of the original pleading in which . . . any new material has been inserted and underlined or set forth in bold-faced type." Here, Plaintiff filed a complete amended complaint with highlights to reflect new additions, thereby conflating the requirements of Local Rules 15.1(a) and 15.1(b). However, Plaintiff's motion complies with the spirit of the relevant Local Rules by identifying the proposed additions to his original complaint. The parties are directed to comply with the letter of the Local Rules in all future submissions to the Court.